UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RITA A. MCCANN,<br>    *Plaintiff*, | )<br>)<br>) |
| *vs.* | )    2:13-cv-00323-JMS-MJD<br>) |
| CAROLYN W. COLVIN, *as Acting Commissioner of Social Security*,<br>    *Defendant*. | )<br>)<br>)<br>) |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Rita A. McCann applied for Social Security disability benefits from the Social Security Administration ("SSA") on September 16, 2010, alleging a disability onset date of August 1, 2010. [Filing No. 9-2 at 17.] Her application was denied initially on December 8, 2010, and upon reconsideration on March 7, 2011. [Filing No. 9-2 at 17.] A hearing was held on April 4, 2012, before Administrative Law Judge Henry Kramzyk (the "ALJ"), who issued a decision on April 13, 2012, determining that Ms. McCann was not disabled and not entitled to receive disability benefits. [Filing No. 9-2 at 17; Filing No. 9-2 at 26.] The Appeals Council denied review on May 21, 2013, [Filing No. 9-2 at 8-10], making the ALJ's decision the Commissioner's "final decision" subject to judicial review. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). Ms. McCann has filed this action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of disability benefits, [Filing No. 1; Filing No. 16].

### I.
#### BACKGROUND

Ms. McCann was 57 years old at the hearing before the ALJ. [Filing No. 9-2 at 36.] She stopped working in March 2010 when she sold a bar and grill that she owned. [Filing No. 9-2 at 40; Filing No. 9-2 at 42.] At that job she poured drinks, served food, cleaned bathrooms, mopped

floors, and did the dishes. [Filing No. 9-2 at 42-43.] Ms. McCann also previously worked at Sony Corporation, where she drove a forklift. [Filing No. 9-2 at 47.]

Ms. McCann alleges that she has been disabled since August 1, 2010, [Filing No. 9-5 at 2], due to chronic back, joint, and neck pain.[1] [Filing No. 9-2 at 48-49.] Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520, the ALJ issued a decision on April 13, 2012, [Filing No. 9-2 at 17-26], finding as follows:

- At Step One, the ALJ found that Ms. McCann had not engaged in substantial gainful activity[2] after the alleged disability onset date. [Filing No. 9-2 at 19.]

- At Step Two, the ALJ found that Ms. McCann suffered from the following severe impairment: degenerative disc disease of the lumbar, thoracic and cervical spine. [Filing No. 9-2 at 19.]

- At Step Three, the ALJ found that Ms. McCann did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [Filing No. 9-2 at 21.] The ALJ concluded that Ms. McCann had the residual functional capacity ("RFC") "to lift and/or carry and push and/or pull up to 20 pounds occasionally and 10 pounds frequently, sit for a total of up to 6 hours in an 8 hour workday, and stand and/or walk for a total of up to 6 hours in an 8 hour workday, with only occasional climbing of ladders, ropes, scaffolds, ramps and

---

[1] Ms. McCann detailed pertinent facts in her opening brief, [Filing No. 17 at 1-3], which the Commissioner does not materially dispute. [Filing No. 23 at 2-4.] Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. McCann, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as necessary to address the parties' arguments.

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

stairs, and occasional balancing, stooping, crouching, kneeling, and crawling." [Filing No. 9-2 at 22.]

- At Step Four, the ALJ found that Ms. McCann is capable of performing her past relevant work as a manager of a liquor establishment. [Filing No. 9-2 at 25.]

- Because the ALJ found Ms. McCann to not be disabled at Step Four since she could perform her past relevant work, he did not reach the Step Five analysis.

[Filing No. 9-2 at 19-26.]

Ms. McCann requested that the Appeals Council review the ALJ's decision, but that request was denied on May 21, 2013. [Filing No. 9-2 at 8.] That decision is the final decision of the Commissioner for purposes of judicial review, and Ms. McCann subsequently sought relief from this Court. [Filing No. 1.]

## II.
## STANDARD OF REVIEW[3]

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

---

[3] Ms. McCann filed the brief supporting her petition for review as a "Motion for Summary Judgment," [Filing No. 16], but the Court will apply the well-established standards for reviewing a social security decision.

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "An affirmative answer leads either to the next step, or, on Steps Three and Five, to a finding that the claimant is disabled. A negative answer at any point, other than Step Three, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.*

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion."

# III.
## DISCUSSION

Ms. McCann argues that the ALJ's decision concluding that she is not disabled must be reversed for three reasons. First, Ms. McCann contends that the ALJ failed to find certain impairments of hers to be severe impairments at Step Two. [Filing No. 17 at 4-6.] Second, Ms. McCann challenges the ALJ's adverse credibility determination. [Filing No. 17 at 11-13.] Third, Ms. McCann contends that the ALJ erred when assessing her RFC, which allegedly led the ALJ to present an incomplete hypothetical to the vocational expert ("VE") at the hearing. [Filing No. 17 at 6-11.]

### A. Step Two Challenge

At Step Two, the ALJ found that Ms. McCann suffered from the following severe impairment: degenerative disc disease of the lumbar, thoracic and cervical spine. [Filing No. 9-2 at 19.] Ms. McCann argues that the ALJ erred when he failed to find that certain other impairments from which she suffered were severe at Step Two. [Filing No. 17 at 4.] Ms. McCann does not clearly state which impairments she alleges the ALJ did not consider to be severe—the heading of this section points to "depression and anxiety," her argument initially points to "degenerative joint disease of the knees, arthritis in her hands, and osteoporosis," and the end of her argument references her "mental health symptoms." [Filing No. 17 at 4-5.] Nevertheless, Ms. McCann concludes that "the ALJ's error of omitting these impairments led to the ALJ's removal of them [from] his RFC consideration." [Filing No. 17 at 6.]

In response, the Commissioner points out that the ALJ's severity assessment is merely a threshold inquiry conducted to screen out groundless claims. [Filing No. 23 at 7.] The Commissioner contends that the ALJ accurately summarized the relevant evidence related to Ms.

McCann's impairments and did not err by failing to find more than one of them to be severe. [Filing No. 23 at 8.]

A severe impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c). The ALJ is required to determine at Step Two whether the claimant in fact has an impairment or combination of impairments that is severe. *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). The burden is on the claimant to prove that the impairment is severe. *Castile*, 617 F.3d at 926. As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the next step of the evaluation process. *Id.* at 927 (citing 20 C.F.R. § 404.1523). If an ALJ finds one or more of a claimant's impairments to be severe, he needs to "consider the aggregate effect of the entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). "Therefore, the step two determination of severity is merely a threshold requirement." *Castile*, 617 F.3d at 927.

The Court rejects Ms. McCann's Step Two challenge. It is undisputed that the ALJ found Ms. McCann to have the severe impairment of degenerative disc disease of the lumbar, thoracic and cervical spine. [Filing No. 9-2 at 19.] Ms. McCann seems to erroneously assume that because the ALJ did not find other impairments to be severe, he "remov[ed] them" from his RFC analysis. [Filing No. 17 at 6.] The Step Two determination, however, is "merely a threshold requirement," *Castile*, 617 F.3d at 927, and 20 C.F.R. § 404.1523 requires the ALJ to consider "the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." Here, after concluding that Ms. McCann had a severe impairment, the ALJ proceeded to Step Three of the five-step sequential analysis. [Filing No. 9-2

at 21.] To the extent that Ms. McCann argues that the ALJ did not consider the limitations of certain impairments of hers when determining her RFC, those arguments will be addressed below when the Court addresses Ms. McCann's challenge to the ALJ's determination of her RFC. [Filing No. 17 at 6-11.]

### B. Adverse Credibility Determination

Ms. McCann challenges the ALJ's adverse credibility finding. [Filing No. 17 at 11-13.] She contends that the ALJ ignored "objective medical evidence and imaging, which reveals her chronic back pains," and her "consistent complaints of debilitating pain." [Filing No. 17 at 12.]

In response, the Commissioner argues that the ALJ sufficiently articulated the adverse credibility finding because he cited a lack of objective medical evidence and significant clinical findings, her conservative course of treatment, the absence of reports of sufficient medication side effects, her activities of daily living, her work history, and her receipt of unemployment benefits. [Filing No. 23 at 11-13.] The Commissioner details the ALJ's analysis of the evidence and argues that Ms. McCann has not shown that the adverse credibility finding was patently wrong. [Filing No. 23 at 13.]

"To evaluate credibility, an ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (referencing SSR 96–7p). The ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations." *Simila*, 573 F.3d at 517.

An ALJ is in the best position to determine the credibility of witnesses, and this Court reviews that determination deferentially, overturning it only if it is "patently wrong." *Craft v.*

*Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Where the credibility determination is based upon objective rather than subjective factors, the Court has "greater freedom to review the ALJ's decision." *Id.* The credibility determination must contain specific reasons for the finding. *Id.* (citing SSR 96–7p). The absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), but when faced with evidence both supporting and detracting from a claimant's allegations, "the resolution of competing arguments based on the record is for the ALJ, not the court[,]" *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). When determining the credibility of the claimant's statements, the ALJ must consider the entire case record, and a credibility determination "must contain specific reasons for the finding . . . supported by the evidence in the case record." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

   *1) Objective Medical Evidence*

Ms. McCann first argues that the ALJ ignored objective evidence of her disability. To support that argument, however, she primarily cites her own subjective complaints of pain. [Filing No. 17 at 12 (detailing her constant complaints of pain, other symptoms, and reported difficulty doing simple tasks).] To the extent that she cites objective evidence, in at least two instances she accurately concedes that any observed degenerative changes in her back were "mild." [Filing No. 17 at 12-13.]

The ALJ gave a detailed summary of Ms. McCann's objective medical evidence, which the Court will summarize. Ms. McCann's back pain began after a work-related injury at the tavern she owned on May 1, 2009. [Filing No. 9-7 at 21.] She had an MRI on May 11, 2009, which revealed that she had decreased height in the thoracic vertebrae at T10 and T11 and also had degenerative disc disease at T10 and T11 but not disc herniation or other significant derangement.

[Filing No. 9-7 at 19.] The ALJ characterized Ms. McCann's subsequent treatment as "conservative at best"—a characterization that Ms. McCann does not challenge—and noted that thoracic spine imaging two years later in October 2011 showed "mild degenerative changes." [Filing No. 9-2 at 23 (citing Filing No. 9-12 at 62).]

Ms. McCann sought emergency treatment in July 2010 for a skin issue, and a physical examination of her back revealed a "normal inspection" with no tenderness. [Filing No. 9-7 at 11.] Ms. McCann had complaints about sciatic nerve pain that resulted in imaging in September 2010, which revealed that her left hip was "normal" and that she was not having any back pain. [Filing No. 9-7 at 16.] That imaging also revealed "normal" vertebral body heights, "mild facet degenerative changes" and "mild osteoporosis." [Filing No. 9-7 at 17.] In September 2011, Ms. McCann went to a routine office exam with her family practitioner and was found to be "healthy" with no significant clinical findings on the exam. [Filing No. 9-7 at 98.]

Dr. Tomas Vegas performed a consultative medical examination on Ms. McCann in November 2010. [Filing No. 9-7 at 49.] Dr. Vegas noted that although Ms. McCann reported tenderness on palpation over the thoracic spinal area and lower lumbar spine, her range of movement was normal. [Filing No. 9-7 at 51.] Dr. Vegas also noted normal dexterity in both of Ms. McCann's hands and normal range of motion in the upper extremities. [Filing No. 9-7 at 51.] Despite moaning and grimacing, Ms. McCann was able to perform all requested tasks. [Filing No. 9-7 at 50.] Ultimately, Dr. Vegas concluded that Ms. McCann suffered from back pain that "does not affect her gait or [range of movement]," hand pain that "does not impair her hand functioning, at least during this examination," and sciatic pain with benign strength and deep tendon reflexes. [Filing No. 9-7 at 51.] Dr. Vegas recommended that Ms. McCann have a psychological evaluation. [Filing No. 9-7 at 51.] The ALJ gave significant weight to Dr. Vegas' opinion, [Filing No. 9-2 at

23], which Ms. McCann does not challenge. Ms. McCann also does not dispute the ALJ's conclusion that Dr. Vegas' opinion "is not contradicted by any treating source." [Filing No. 9-2 at 24.]

Based on this evidence, the Court rejects Ms. McCann's argument that the ALJ ignored objective evidence supporting her disability. Ms. McCann correctly concedes that, as the ALJ noted, much of this objective medical evidence shows mild degeneration. Ms. McCann does not challenge the ALJ's characterization of her treatment as conservative, the ALJ's reliance on Dr. Vegas' examination, or dispute the ALJ's conclusion that Dr. Vegas' findings are not contradicted by any treating source. Accordingly, the Court rejects Ms. McCann's argument that the ALJ ignored objective evidence of her disability in making the adverse credibility finding.

### 2) *Subjective Complaints of Pain*

Ms. McCann also challenges the ALJ's adverse credibility finding by contending that the ALJ ignored her subjective complaints of pain. [Filing No. 17 at 12-13.] She contends that the ALJ should have found her subjective complaints to be fully credible. [Filing No. 17 at 12.]

In response, the Commissioner argues that the ALJ's decision reflects that he considered multiple factors in assessing the credibility of Ms. McCann's subjective complaints. [Filing No. 23 at 11.] The Commissioner specifically points to the ALJ's conclusions regarding Ms. McCann's activities of daily living, including recent vacations, her conservative course of treatment, her work history, and her receipt of unemployment benefits. [Filing No. 23 at 11 (citing Filing No. 9-2 at 24).]

In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify his finding with specific reasons.

Cir. 2009) (citing S.S.R. 96-7p). An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results. *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014) (citations omitted). "Pain can be severe to the point of being disabling even though no physical cause can be identified, though in such cases, the claimant's credibility becomes pivotal." *Id.* "The lack of objective support from physical examinations and test results is still relevant even if an ALJ may not base a decision solely on the lack of objective corroboration of complaints of pain." *Id.*

The ALJ supported his adverse credibility finding regarding Ms. McCann's subjective complaints with multiple reasons that Ms. McCann ignores on appeal. [*Compare* Filing No. 17 at 12-13 (Ms. McCann's brief) *with* Filing No. 9-2 at 24 (ALJ adverse credibility finding detailing inconsistencies, Ms. McCann's work history, activities of daily living, and receipt of unemployment benefits).] For example, the ALJ noted that Ms. McCann testified at the hearing that she had taken three trips within the past year, as recently as the month before the hearing when she flew to Las Vegas, Nevada for her daughter's wedding. [Filing No. 9-2 at 24 (citing Filing No. 9-2 at 55).]

The ALJ also noted inconsistences between Ms. McCann's testimony at the hearing and other evidence. For example, the ALJ pointed out that although Ms. McCann testified at the hearing that she cannot walk more than 50 feet at a time, approximately six months before the hearing Ms. McCann told her rheumatology consultant that she walked for exercise every day. [Filing No. 9-2 at 24 (citing Filing No. 9-12 at 53).]

The ALJ also cited Ms. McCann's testimony regarding her activities of daily living, which is a factor that Social Security Regulation 96-7p lists as one of the factors to determine credibility. The ALJ pointed out that Ms. McCann testified that she is independent in her personal care; is able

to do laundry, wash dishes, shop, and go out with her husband; and is able to go out with friends for lunch occasionally. [Filing No. 9-2 at 24 (citing Filing No. 9-2 at 54-55).] Ms. McCann also testified that she could drive, and the ALJ pointed out that she drove herself the 40 minutes to the hearing. [Filing No. 9-2 at 24 (citing Filing No. 9-2 at 59).]

Ms. McCann confirmed at the hearing that she worked full-time for a year after her back injury. [Filing No. 9-2 at 23 (referencing Filing No. 9-2 at 48 (Ms. McCann's testimony that she worked until August 1, 2010), Filing No. 9-2 at 44-45 (describing her hours and activities at her job and noting that she made herself sit down more after the injury).] Ms. McCann also confirmed that she received unemployment benefits for year after selling her business, until approximately mid-2011, and she testified that she actively sought employment during that time for "something that I could move around a little bit, do little things, like I could sit for a little while and stand." [Filing No. 9-2 at 24 (citing Filing No. 9-2 at 40-41).] As the ALJ cited in his decision, the Seventh Circuit has held that a claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that she is able to work may play a role as "one of many factors" in a credibility analysis. [Filing No. 9-2 at 24 (citing *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005)).]

While none of these cited factors is dispositive on its own,[4] the ALJ's opinion adequately detailed the evidence surrounding Ms. McCann's subjective complaints of pain and built a logical bridge from that evidence to his conclusion that those subjective complaints were not credible. [Filing No. 9-2 at 24-25.] Ms. McCann ignores these reasons on appeal. Thus, the Court rejects

---

[4] The Court is aware of Seventh Circuit precedent that precludes an ALJ from making an adverse credibility determination solely based on activities of daily living, *see, e.g.*, *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010), or continuing to work despite pain, *see, e.g.*, *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013). In this case, however, the ALJ made the adverse credibility finding based on multiple factors detailed herein, not based on one of these factors alone.

her argument that the ALJ erred by making an adverse credibility finding regarding her subjective complaints of pain.

### 3) Conclusion

The Court rejects Ms. McCann's argument that the ALJ's adverse credibility finding was patently wrong. Ms. McCann has not pointed to objective evidence of her disability that the ALJ mischaracterized or ignored, and she does not address the reasons the ALJ cited for finding her subjective complaints of pain not to be credible. As the Court noted in the applicable standard, the ALJ is in the best position to determine credibility, and this Court will only overturn that determination if it is patently wrong. *Craft*, 539 F.3d at 678. This is not such a case.

### C. Alleged Errors with RFC

Ms. McCann argues that the ALJ erred in determining her RFC. [Filing No. 17 at 6-11.] Specifically, Ms. McCann contends that the ALJ failed to incorporate all of her limitations into her RFC. [Filing No. 17 at 7.] Ms. McCann argues that she suffers from chronic pain in parts of her body, and she cites various evidence supporting diagnoses that she has received. [Filing No. 17 at 8.] Ms. McCann concludes that the record shows that she "would be unable to perform work at the level that the ALJ determined in his RFC finding" because she has "increased pain with prolonged sitting and standing, chronic pain in her hands, and limited ability to ambulate effectively." [Filing No. 17 at 9.]

In response, the Commissioner contends that the RFC included the appropriate non-exertional and physical limitations for Ms. McCann. [Filing No. 23 at 9-10.] The Commissioner emphasizes that diagnoses alone are not enough to establish functional limitations and that Ms. McCann's medical evidence only establishes mild limitations. [Filing No. 23 at 10.]

"When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered severe." *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(2), (b), (c)).  The mere "diagnosis of an impairment does not establish the severity of the impairment." *Flint v. Astrue*, 2013 WL 30104, *5 (S.D. Ind. 2013) (citing *Estok v. Apfel*, 152 F.3d 636, 639-40 (7th Cir. 1998)); *see Stanley v. Astrue*, 2012 WL 1158630, *8 n.8 (N.D. Ind. 2012) ("[T]he diagnosis of an impairment does not alone establish its severity and its resulting limitations."); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003) (affirming the ALJ's determination that the claimant's depression and dysthymia were non-severe impairments because there was evidence that the claimant "had been able to work despite these problems" and no "doctor commented on any lingering effects" of these impairments); *Bunch v. Heckler*, 778 F.2d 396, 401 (7th Cir. 1985) (affirming the ALJ's determination that the claimant's mental impairments were non-severe because the evidence was "sufficient to support a conclusion that her mental impairment did not significantly limit her ability to do basic work activities").

Ms. McCann's challenge to the ALJ's RFC determination is largely a restatement of her argument regarding the ALJ's adverse credibility finding, which the Court has already rejected. To the extent she argues that the ALJ erred by not incorporating alleged functional limitations from her subjective complaints of pain, the Court has already upheld the ALJ's adverse credibility determination on that point.

Ms. McCann points to the same objective medical evidence almost verbatim from her credibility argument. [*Compare* Filing No. 17 at 12-13 (Ms. McCann's credibility argument) *with* Filing No. 17 at 8-9 (Ms. McCann's RFC argument).] The Court has already concluded that she has not shown that the ALJ ignored or mischaracterized that evidence. With regard to the RFC

determination, the medical evidence Ms. McCann cites details diagnoses that she has received, not resulting functional limitations. [Filing No. 17 at 7-8.] But "the diagnosis of an impairment does not alone establish its severity and its resulting limitations." *Stanley*, 2012 WL 1158630 at *11 (citing *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of these various conditions of hers but their severity and, concretely, whether, as she testified with corroboration by her husband, they have caused her such severe pain that she cannot work full time.")). And a claimant's RFC—residual *functional* capacity—accounts for functional limitations related to the claimant's impairments, not just the diagnosis of an impairment. *See* 20 C.F.R. § 404.1545 (noting that the RFC accounts for "physical and mental *limitations*" from the impairments) (emphasis added).

The Court concludes that Ms. McCann has not shown that the ALJ's RFC determination was erroneous. She does not cite any medical source opinions suggesting that her limitations are beyond those that the ALJ incorporated into the RFC, and, instead, erroneously relies on diagnoses alone to support her argument. Accordingly, the Court concludes that Ms. McCann has not established that that the ALJ erred in determining her RFC.[5]

---

[5] At the end of her argument regarding the RFC determination, Ms. McCann makes a generic Step Five challenge to the hypotheticals proposed to the VE, arguing that "because the ALJ failed to incorporate all of Plaintiff's documented limitations, the VE was not presented with a correct hypothetical." [Filing No. 17 at 9.] Because the Court has rejected Ms. McCann's RFC challenge and her Step Five challenge hinges on her RFC argument, the Court need not address it further.

# IV.
## CONCLUSION

The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis presented by Ms. McCann to overturn the decision that she is not disabled. Therefore, the decision below is **AFFIRMED**. The Court directs the Clerk to **TERMINATE** the motion pending at Filing No. 16. Final judgment shall issue accordingly.

August 29, 2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Kelie C. Schneider
DALEY DISABILITY LAW
kelie.schneider@gmail.com

Frederick J. Daley, Jr.
DALEY DISABILITY LAW P.C.
fdaley@fdaleylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov